# W. D. GRISWOLD ET AL.

## V.

# MARY JANE BROCK ET AL.

*Real Property—Contract to Sell—Specific Performance.*

1. It is too late for a person in possession of lands under a contract to convey, to object to a deed tendered after examining the same, and stating that it was satisfactory.

2. Upon a bill filed, asking that the purchase price of certain lands in possession of the defendants be paid with interest, or that an account be taken of rents and profits derived from said lands, and the original purchase money with the rents and profits should be paid, a certain contract of sale thereof having been entered into, the defendants having paid a nominal sum and entered thereon, this court holds, that complainants were not barred through *laches*, from maintaining their bill, and declines, in view of the evidence, to interfere with the decree in their behalf.

[Opinion filed February 26, 1892.]

APPEAL from the Circuit Court of St. Clair County; the Hon. B. R. BURROUGHS, Judge, presiding.

Mr. W. C. KUEFFNER, for appellants.

A contract to sell and convey real estate can only be performed by giving a deed that will vest in the grantee an unincumbered title. Delavan v. Duncan, 49 N. Y. 485.

When a man buys a piece of land, and contracts for a conveyance in general terms, the presumption is that he expects the title, and the grantor should be required to give him a perfect title. Atkins v. Barnett, 19 Barb. 643.

"The rule in equity is clear and well established, requiring a perfect title to be made, unless the contrary has been agreed. A person is never supposed to be desirous of purchasing a law suit, or a title attended with doubt and vexation, instead of one upon which he can quietly repose. Mr. Sugden says: "A court of law will look as anxiously to see that the title is clear of doubt, as a court of equity would." Hill v. Hobart, 16 Maine, 164.

An agreement to convey land or estate, or a title to it, can be performed only by conveying a good title.   Ib.

Where one agreed to "sell and convey" a lot of land for an agreed price, to be paid at a time subsequent to the giving of the deed, held, that a tender of a deed of warranty, while the land was under the incumbrance of a mortgage, was not a fulfillment of the covenant.   Sibley v. Spring, 12 Fairf. (Me.) 460.

A vendee under an executory contract can not be compelled to accept a title made out by presumption from length of possession.   Tevis v. Richardson, 7 T. B. Mon. (Ky.) 564.

A vendor of land in his own right is bound to convey it with general warranty, unless it is otherwise agreed between the parties.   Hoback v. Kilgore, 26 Gratt. (Va.) 442.

Color of title, as this court has repeatedly held, is not a perfect title.   Payne v. Markle, 89 Ill. 69.

One who agrees to sell real estate, impliedly agrees to give a good title, unless the liability is expressly excluded.   Moulton v. Chapee, 22 Fed. Rep. 26.

" A familiar rule of interpretation requires that we shall give force and effect to all the words employed by the parties in expressing their agreement, when that is possible."   Bowman v. Long, 89 Ill. 19.

Where a party agrees to convey land, and nothing is said as to the character of the conveyance, and nothing connected with the transaction to indicate the species of conveyance intended, the law implies a deed in fee simple with covenants of general warranty.   Witter v. Briscoe, 13 Ark. 422; Vardeman v. Lawson, 17 Tex. 10 ; Goddin v. Vaughn, 14 Grat. (Va.) 102.

Where a party has agreed to "convey" certain real estate, it is not enough for him to show that he has tendered a deed for it, but he must show that he had a title to it at the time, so that his deed would have conveyed the property.   Abendroth v. Greenwich, 29 Conn. 356.

A general presumption is that a contract to convey is a contract to convey a good title.   Schreck v. Pierce, 3 Ia. 350.

. A deed conveying not the land, but all the grantor's interest

in land, is color of title only to the extent of the grantor's interest. Busch v. Huston, 75 Ill. 343.

"In order to take the benefit of the limitation under claim and color of title, the payment of taxes must be by the person who holds the color of title. If the taxes for any of the seven years were paid by one in whom the title was not existing, the limitation fails." Fell v. Cessford, 26 Ill. 522.

"Where a party seeking to acquire title under the seven years' limitation act, allows the land to be sold for taxes during the running of the statute, and afterward redeems from such sale, he will be required to begin *de novo*, and wait the required time for a deed." Wettig v. Bowman, 47 Ill. 17.

A party who claims title under color of title, possession and payment of taxes, must have acquired his color of title in good faith. Chap. 83, R. S. of 1874, Sec. 6; R. S. of 1845, p. 104, Sec. 8, relating to conveyances.

"Color and claim of title may be made in good and bad faith. · The good or bad faith is not the result of color of claim. The faith, whether good or bad, depends upon the purpose for which the deed is obtained, and the reliance placed upon the claim and the color. A party receiving color of title, knowing it to be worthless, or in fraud of the owner's rights, although he holds the color and asserts the claim, can not render it availing, because of the want of good faith." Hardin v. Gouverneur, 69 Ill. 144.

"Claim of title in good faith is claiming in the sincere belief to be the owner of the premises. The good faith required in the acquisition of color of title is a freedom from a design to defraud the person having a better title." Davis v. Hall, 92 Ill. 85; McCagg v. Heacock, 34 Ill. 476.

"A purchase of land at a sale for taxes by one whose duty it was to pay the taxes, will operate as a payment of the taxes only, and the purchaser will not be permitted to acquire any title by such a purchase." Lewis v. Ward, 99 Ill. 525. To same effect Busch v. Huston, 75 Ill. 343.

Mere possession of the land, when the taxes for which it is sold is assessed, does not prevent the party from purchasing, but if the party in possession claims title to the land, or some

interest therein, he can not purchase. Burroughs on Tax., 352; McMinnus v. Whelan, 27 Cal. 300 ; Lacey v. Davis, 4 Mich. 152.

If a party is in possession of land, claiming to be the owner, it is his duty to pay the taxes. Seaver v. Cobb, 98 Ill. 204.

" The person in whose name the land was listed and assessed for taxation (and whose duty it is to pay the taxes), can acquire no additional title by purchasing it at a tax sale." Blackwell on Tax Titles, marginal p. 399, 400; Doughan v. Dangerfeld, 10 Ohio, 152; Ballance v. Forsyth, 13 How. (U. S.) 18; Voris v. Thomas, 12 Ill. 442; Glancy v. Elliott, 14 Ill. 456; Chambers v. Wilson, 2 Watts, 495 ; Garwood v. Hastings, 38 Cal. 223.

" And where it appears that one was in possession of land, claiming title thereto, when certain taxes were assessed, it must be presumed that the land was assessed to him as owner or occupant, as the law required, and that it was his duty to pay the taxes; and he could, therefore, acquire no title by a purchase at the sale for such taxes." Blackwell on Tax Titles, marginal p. 399, 400; Whitney v. Gunderson, 31 Wis. 359; Jones v. Davis, 84 Wis. 229.

" A party holding by colorable title, in order to perfect it, must pay the taxes for seven successive years." Elston v. Kennicott, 46 Ill. 187. To same effect Cooter v. Dearborn, 115 Ill. 509.

" Inasmuch as the payment of taxes under color of title operates to defeat the paramount and all other titles, when relied on, the proof must be clear and convincing. Such titles should not be overcome by loose and uncertain testimony, or upon mere conjecture or violent presumptions." Hurlbut v. Bradford, 109 Ill. 397; Perry v. Burton, 111 Ill. 144. " To constitute color of title, the deed must purport to convey the title to the land of which it is claimed to be color of title."

In this case there was a question, whether the taxes had been paid for seven years. At first the party swore positively that he had paid them, but on cross-examination he admitted that he could not be positive. His testimony was very much like that of Mr. Brock in this case, with reference to the

payment of taxes. The court say that such evidence, to overcome the real title, should be clear and convincing, and that loose and uncertain testimony will not suffice, citing Hurlbut v. Bradford, 109 Ill. 397, adding, "this evidence utterly fails to come up to this standard." Perry v. Burton, 111 Ill. 138.

An action can not be maintained by the vendor of land for the purchase money, without first tendering a deed and making a demand, where he contracts to execute and deliver a deed thereof to the buyer upon the payment of the purchase money. Kelly v. Mack, 64 Cal. 303.

Where a purchaser agrees to pay for lots in a certain way, and the seller agrees to convey the lots, the owner must tender the deeds before he can demand payment. Guerdon v. Corbett, 87 Ill. 272.

Where, by agreement, the conveyance of real estate was to precede the payment of the purchase money, and the grantor gave a deed which so imperfectly described the land as to convey no title, *held*, that no action would lie for the money until a good deed had been tendered. Overly v. Tipton, 68 Ind. 410.

A party contracting to execute and deliver a deed is bound to prepare the deed if there be no agreement that it shall be prepared by the other party, and the vendor must tender it to the vendee before he can demand the purchase money. Baston v. Clifford, 68 Ill. 67; Headley v. Shaw, 39 Ill. 354.

Interest is not demandable on a land contract, while the purchaser is not in default. Allen v. Atkinson, 21 Mich. 351.

An action can not be maintained by the vendor of the land for the purchase money, without first tendering a deed and making a demand, where he contracts to execute and deliver a deed thereof to the buyer upon the payment of the purchase money. Kelly v. Mack, 45 Cal. 303.

Where a conveyance is to be made upon payment of the purchase money, the respective acts are dependent, and neither party can insist upon the performance of the thing stipulated to be done by the other without performance or an offer to perform upon his part. A mere allegation in the bill

of an offer and readiness to make a deed will not do. Kimbrough v. Curtis, 50 Miss. 117.

"The vendor, in an action against the vendee for the purchase money, must show that he has prepared and tendered a deed of conveyance, or has offered to prepare and tender such deed, or has been discharged or excused from preparing and tendering it by the acts or conduct of the vendee." 1 Chitty on Contracts, II, Am. Ed., p. 425. Notes and authorities there cited.

*Laches* in seeking relief under a contract of sale will preclude the relief. Fitch v. Willard, 73 Ill. 92.

The question was decided in the case of Burger et al. v. Potter et al., 32 Ill. 70. There Lemuel Burger agreed to convey to Ephraim Potter certain land for a stipulated price, and then died before making a conveyance and before the purchase money was paid in full, leaving minor heirs. The executors and his heirs, including the minors by their next friend, brought suit against the purchaser to vest the title in the latter and to enforce the payment of the purchase money. The court made a decree accordingly. The Supreme Court held, that a court of equity had jurisdiction of this kind of a suit, but reversed this case, because relief had been granted not warranted by the allegations in the bill. Burger v. Potter, 32 Ill. 66. But in this case the statute of limitations had commenced to run in the lifetime of Piggott, and his death did not arrest it. Under the contract of sale it was his duty to ascertain the quantity of ground sold and to tender a deed.

A party may not plead his own neglect of duty as a ground for avoiding the limitation. Furlong v. Riley, 103 Ill. 628.

"Where a statute of limitations begins to run, it will continue to run until it operates as a complete bar, unless there is some saving or qualification in the statute itself." Bonney v. Stoughton, 122 Ill. 542; Wood on Limitations, 10.

Where the statute begins to run against the ancestor, it is not suspended by any statutory disability in the heir at the time of the descent-cast. Rogers v. Brown, 61 Mo. 187; Swearington v. Robertson, 39 Wis. 462.

The statute applies only to disabilities existing when the

right accrues; after-accruing disability will not stop its operation.  Ward on Limitations, 12.

The statute had been running against this claim about nine years when Piggott died in 1874.  He would have been barred at law in 1885, when this suit was commenced, had he been living.  It follows that his heirs are barred in equity.

" Where a party, with full knowledge of all the facts, sleeps upon his rights for nineteen years without asserting his equities, and no sufficient excuse is shown for the delay, his *laches* will be such as to present a bar to relief in a court of equity. A court of equity will not enforce a stale demand."  Castner v. Walrod, 83 Ill. 171.  To similar effect: Walker v. Ray, 111 Ill. 315; Harris v. McIntyre, 118 Ill. 275.

" It is the settled doctrine of this court, that a party can not make one case by his pleading, and another and different case by his proofs."  McKay v. Bissett, 5 Gilm. 499; Morgan v. Smith, 11 Ill. 194; Rowan v. Bowles, 21 Ill. 16; Burger v. Potter, 32 Ill. 66; Randolph v. Onstott, 58 Ill. 52; Munn v. Burges, 70 Ill. 604; Heath v. Hall, 60 Ill. 350.

Messrs. KOERNER & HORNER, for appellees.

The appellants' counsel cites a number of authorities to show that a contract to sell and convey real estate can only be performed by giving a deed that will vest a good title, and which is a deed of warranty.

We are not disposed to question this contention.  As for the deeds tendered the heirs in 1885, the point made has no foundation in fact, as they were warranty deeds.  As to the deed tendered by Piggott in 1872, all objections were waived, except those indorsed by Bowman on the deed.  While the mere taking possession of the land under an executory contract to convey, may not amount to a waiver of any objection to the title, unless accompanied with acts or expressions showing satisfaction, yet when, after possession is taken and a deed tendered by complainants, as it was in this case, and there is no objection to either the form or substance of the deed, but only as to the price to be paid, it can surely not be contended that the question of title or quantity conveyed is not waived.

The appellants' counsel incumbered the pages of the record quite unnecessarily with authorities to show that Piggott's tax title was not a good title. We ought to have been supposed to know that. We did not set up the tax title and never pretended in our arguments below or in our former briefs, that he had a good tax title; and, furthermore, what would have availed it under the proviso of the contract, which stipulated that for land held by Piggott by tax title *only*, a nominal price should be paid? He had title by possession, and not a tax title only. As long as Griswold and Bowman had no deed for the land, they were as his vendees in possession under him, so that when the deeds were tendered, there was a possession of thirty-seven years in Piggott and his heirs. It was said that the title to the land was in dispute. There was a question raised after the deed was made for survey 116. Griswold and Bowman contended that 116, bought of Piggott, extended farther south. Boismenue, owner of 115, had fenced up to what he contended was his northern line. Piggott had nothing to do with that case. Griswold, to whom the deed had been made on Bowman's request, sued Boismenue in ejectment in 1874, after Piggott was dead, and finally succeeded in adding several rods to the land purchased by them in 1865. It was not a question of title at all, but only as to the proper boundary.

Suppose there had been *laches* on our side, it, as has been proved, had been waived. If it is said that there is no allegation of any waiver in our bill, we answer that it is impossible to anticipate all the different lines of defense that might be made. The case was in court for four years before the defendants amended their answers, setting up *laches*. Special replications are not allowed in chancery cases, otherwise we could have replied the waiver. But who caused the delay after the survey was made? The bill alleges that owing to the minority of one of the heirs, who only had come of age a year before the bill was filed, a deed could not be made by all the heirs, although those of age had often offered to make a deed for their respective shares to the said Griswold and Bowman, which offer was not accepted by said defendants.

Now what is the testimony on that point? Brock testifies:

Griswold v. Brock.

"Some time after the memorandum of 1880, made by Mr. Bowman, we made a deed out for my wife and Mrs. Lame, two of the heirs, and presented it to Bowman, and he said he did not want a deed unless he got a deed for the whole from all parties. This deed was dated September 20, 1883. It will be seen then that as late as 1883 he made no objection as to the title. His principal objection seemed to be that he wanted a deed from all the parties; he would not pay unless he had all of them. Some of the other heirs made a deed, and I don't know but they went and acknowledged it, but it was never presented to him. I did tell the heirs that he would not take a deed unless all would sign it. I remember that we made a demand upon Mr. Bowman for a settlement or a payment of the money as many as a dozen times, and he kept putting us off. I knew that Mr. Piggott run after him ten years previous to his death as often as a dozen times a year, trying to get a settlement of the estate, but Bowman put him off."

It is said that the heirs might have made a deed and compelled payment of the money, although one or more of the heirs were not of age. Without stopping to say anything on this point, we would remark that most certainly could the defendants have filed a bill for the specific performance, although there was a minor in the case. If complainants could be held guilty of *laches*, the defendants surely are equally guilty. But we repeat, all this was waived. Bowman did not tell counsel for complainants, when the deeds were tendered him in 1885, that it was too late to tender the deeds, but told him Mr. Thomas should examine them.

PHILLIPS, J. The appellees filed their bill in chancery averring that Isaac N. Piggott on the 16th day of January, A. D. 1865, was the owner of certain lands in the bill described, which, with other lands owned by him, he on that day contracted to sell to W. D. Griswold and John B. Bowman. By that contract in writing Piggott sold all of lots 116 and 117 of the common fields of Cahokia in St. Clair County to him belonging and situated southwestwardly from the town of

Illinoistown, and what is known as Piggott's addition to same, excepting therefrom not exceeding three acres adjoining the said addition, and also two acres bargained and sold to one John Atton. A part of this land was to be paid for at the rate of $75 per acre, and a part to be paid for at $50 per acre. By the terms of the agreement the land was to be paid for in cash on delivery of deed. The quantity of the ground thereby bargained and sold to be ascertained by the said Piggott at the cost of all the parties. The contract contains the further clause: "What part of the said land is held by Piggott only under tax title is to be included on the conveyance of the balance at a nominal price." By a further agreement between the parties to that contract, made on the 23d day of May, 1866, Piggott was to assign certain leases on the payment of the purchase money, and a certain part of survey 116 was excepted from the contract. On the same day the last mentioned agreement was made, a further agreement was made by which it appears that on that day a payment was made to Piggott of $7,025, and at the request of Bowman a deed, conveying to W. D. Griswold 113.10 acres of land of survey 116, was made and delivered by Piggott. That agreement contains this further clause: "The delivery of such deed shall not be construed as a consummation of said bargain, and shall be expressed in the document above referred to as executed on the 16th of January, 1865, but the said Bowman and Griswold. or their legal representatives shall be entitled to any other deed necessary by me to be made, to convey to them under the conditions of said document all the land they are entitled to by the terms thereof." On the execution of the agreement of January 16, 1865, Griswold and Bowman took possession of the land in the agreement mentioned, and have since been in possession. The land in survey 117 not having been conveyed, the purchasers paid $100 thereon. On the 10th day of June, 1866, Piggott tendered a deed from himself and wife to John B. Bowman, conveying fifty-three acres in survey 117 to W. D. Griswold, on which deed Bowman indorsed his reasons for refusing to accept the same, which were that the deed conveyed more land than the grantee owned or possessed,

Griswold v. Brock.

or delivered possession of, or could convey and give possession of. On the 11th of February, 1874, Piggott died intestate, leaving as heirs at law the complainants, among whom was Dexter C. Slaten, who was a minor, who did not become of age until within a short time prior to filing the bill in this cause. The evidence shows, that on the 11th day of April, 1885, G. Koerner, as attorney for complainants, tendered two deeds, one signed by Mary Jane Brock, Robert F. Brock and Asenath P. Lame, of date February 16, 1885, the other signed by Christopher J. Slaten, Allen M. Slaten, Dexter C. Slaten, Cornelia R. Allemang, Thaddeus A. Slaten, Dwight D. Slaten, John W. Slaten, Elisabeth P. Slaten, Adeline Slaten, Eva M. Slaten, Milford Allemang, Victoria Slaten, and George M. Slaten, which deeds convey to W. D. Griswold and John B. Bowman 25.743 acres of land in survey No. 117, and these deeds were by Bowman required to be delivered to C. W. Thomas, who was attorney for Bowman, for examination, and his action thereon in accepting. When the deeds were so tendered to Thomas, as attorney for Bowman, he offered to pay a nominal consideration for the 25.743 acres, and made no specific objection to the deeds in any manner. On the 16th day of April, 1885, this bill was filed asking that the purchase money, with interest, should be paid, or that an account be taken of rents and profits derived from the land, and the original purchase money with the rents and profits, should be paid. Answers were filed by Bowman and Griswold, and subsequently a suggestion of the death of John B. Bowman was made, showing his personal representatives and heirs, and they being brought into court filed their answer. From the amended answer of Griswold, he ratifies the agreement made by Bowman for Griswold and Bowman; that it is not necessary to consider his testimony concerning a denial of any authority on the part of Bowman to make the contract.

No question is made as to the correctness of the survey or the quantity of land described in the deed, but it is insisted that no deeds were tendered to Griswold, and that the plaintiff had no title to the lands in survey 117, unless a tax title, and that for that only, a nominal price was to be paid.

The court entered a decree for complainants for the purchase money, with interest, and decreed the payment of $2.984.50, and upon payment of the same, the title should vest in the grantees in the deed, and in default of such payment, the master in chancery should sell the land in survey 117 as described on the bill, and from the proceeds pay to complainants the amount found due. The evidence shows that Bowman entered into the contract with Piggott in behalf of himself and Griswold and the making of the contract and all negotiations with reference to that contract and with reference to the execution of the deeds so far as Bowman and Griswold were concerned, was the act of Bowman. From the answer of Griswold it is shown he ratified the contract so made. That ratification of the contract was an approval of the acts of Bowman, and as he had been the active partner in reference to the entire matter, so far as he and Griswold were concerned, the tender of the deed to him was a compliance with the contract on the part of the heirs. When these deeds were so tendered, Bowman directed they should be submitted to his attorney, C. W. Thomas, for his examination, and when so submitted, no objection was made as to the form of the deed. But he pronounced the deed all right and proposed to pay a nominal price for the land. The payment of a nominal price was refused. It is now urged that the deeds are quit claim deeds, and that defendants are not bound to accept any other than warranty deeds under the contract. The deeds recite the agreement and convey all the interests the heirs of Piggott have in the premises and covenant against any acts of theirs to in any manner affect or incumber the title. Had an objection existed as to the form of the deeds at the time they were tendered and examined and stated to be all right, it was the duty of defendants to state that objection. Corbus v. Teed, 69 Ill. 205.

At the time of the execution of the contract of sale and for some years thereafter the quantity of land in survey No. 117 could not be determined, as there were conflicting claims with reference to a part of that survey, and litigation grew out of such conflicting claims, the several suits were determined

and the amount of land mentioned in the deeds was found to be in Griswold and Bowman, who entered into possession under their contract of purchase from Piggott. It is insisted by the defendants that the complainants are guilty of *laches* in not sooner bringing their suit for performance. The evidence shows that shortly after the settlement of that litigation prior to determining the amount of land to be conveyed, one of the complainants was yet a minor, and when he came of age the deed was tendered, and shortly thereafter this bill filed. During all the time from the making of the contract, the vendees were in possession enjoying the rents and profits, and there was not such *laches* on the part of the complainants as to bar their action. It is urged, further, by the terms of the contract this land was to be paid for at the nominal price, as it is insisted that Piggott had no title other than a tax title.

By the contract of sale the vendees are to pay the vendor "for all of said lands so bargained and sold, and lying northwestwardly of the county road across said survey leading from Cahokia to Papstown, $75 per acre, and for all of said land lying southeastwardly of said road $50 per acre."

The plat of survey offered in evidence with the other testimony shows the quantity of land lying northwestwardly of said road to be 16.11 acres, and lying southeastwardly to be 9.63 acres. By a memorandum shown to have been made by Bowman, the 23d of January, 1880, his calculation made the quantity substantially the same, and that southeast of said road he calculated at $50 per acre. That memorandum, taking into consideration the contract, the quantity of land and the location, leaves the conviction that Bowman calculated this land as sold under the contract. It further appears that he was conversant with the title Piggott had to the land. We are satisfied his intention at the time of the execution of the contract of sale was to include the lands in the contract at the price then mentioned, and the court found correctly, from the evidence, that the lands in controversy were sold at the price as found by the court. The question as to what title Piggott had to the land is of more serious difficulty if it became necessary to determine that question, but as we view the facts in

this record, it is not necessary for us to determine that question. As we have seen, the contract was to pay the price for the land as found by the court. The vendees were let into immediate possession of the land. The rents and profits of the land for about twenty years was about six dollars per acre, and that has accrued to the vendees. There has been litigation in reference to title and possession of parts of the land which has been adjudicated in favor of the vendees. Whatever interest they have in the land they acquired by virtue of their contract with Piggott. They have paid only $100 on a tract of land, which, as correctly found by the court, was to be paid for at the price of $1,689.75. The taxes with interest thereon as paid by these complainants since the vendees have been in possession, amount to $660.21. The interest on the value of the land from the time the deeds were tendered amounts to $448.25. These sums, less the $100 paid at the time of the delivery of the deed to survey 116 is the total of this sum decreed to be paid. The vendees make no offer to deliver possession back to the heirs of the vendor, but seek to hold the same by reason of the clause in the contract that "What part of the said land is held by Piggott only under a tax title, is to be included in the conveyance of the balance at a nominal price."

If Bowman knew the condition of the title that Piggott had in this land, and entered into the contract that he did, it was a contract to pay a specified price for the land, and from all his conduct, from the manner in which he made the memorandum as to its value, we are satisfied that he treated this land as being specially contracted for at $50 and $75 per acre, and he to take whatever title Piggott had. He contracted to sell to them and they entered under the contract. That title was good enough to defeat the several suits brought to test the right to the possession of the land. It was a sufficient title for them to hold the land under for a term of more than twenty years from the execution of the contract on the 16th of January, 1865, to the tender of the deeds on the 11th of April, 1885. That without determining the character of title Piggott held under the contract of purchase, it was to be

paid for at the prices of $50 and $75 per acre, and the deed to convey such title as Piggott held. Nor was it error to decree interest on the value of the land not paid for from the time of the tender of the deeds. After the execution of the deeds and their tender, complainants, or their ancestors, were not in default, and from that time interest was properly decreed to be paid. The decree is affirmed.

*Decree affirmed.*